(No. 00014

BETTIE A. WILKES and SYBIL M. WILKES as designated beneficiaries of GEORGE A. WILKES, deceased, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed September 27, 1972.*

JOHN ANDRINGA, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, and VINCENT J. BISKUPIC, Special Assistant Attorney General, for Respondent.

BURKS, J.

This claim, arising out of the death of Lt. GEORGE A. WILKES of the Chicago Fire Department, was filed pursuant to the provision of the "Law Enforcement Officer and Firemen Compensation Act." *Ch. 48, Sec. 281 et seq., Ill.Rev. Stat., 1971.*

The claimants, BETTIE A. WILKES and SYBIL M. WILKES, are named beneficiaries under the Application for Benefits which was duly filed. The case was heard by the Court on August 3, 1972, and the following facts were elicited:

Lt. GEORGE A. WILKES was a fireman employed by the Chicago Fire Department assigned to firehouse 101 in the City of Chicago at the time of his death on April 12, 1970. The claimants contend that the decedent accidentally struck his leg on a step while descending the firehouse stairs on March 18, 1970, and that this incident was the cause of his death almost one month later. Respondent denied that any such incident took place and further contended that there was no causal connection between the alleged incident and the death of Lt. Wilkes.

Testimony showed that Lt. Wilkes was the officer in charge of firehouse 101 on the date of the alleged incident, March 18, 1970, and that one of his duties was to maintain the log kept at the firehouse. Lt. Wilkes had long experience in maintaining the log records and knew that it must contain a report of all accidents. There is no notation of an accident occurring to Lt. Wilkes on the day in question. His wife, one of the claimants herein, delivered a report to Lt. Wilkes' immediate superior on March 20, 1970, which indicated that the decedent would be unable to return to work for a period of one week. March 20th was to be the next assignment day for Lt. Wilkes since it was the policy of the Chicago Fire Department that all men would work 24 hours on and 48 hours off.

Submitted in evidence was a report from Dr. Herold Thatcher indicating that Wilkes had been seen by him on March 19, 1970, and that a diagnosis of "thrombophlebitis" was made. The date of the report was May 14, 1970, over one month after the date of death of the decedent. The

report also noted that as of the 19th of March, 1970, the decedent's complaint had been of two days duration and also noted that Mr. Wilkes was last seen on March 31, 1970, at which time his condition had improved.

The coroner's certificate of death, introduced into evidence, described the cause of death as a "stroke, cerebral hemorrhage."

The respondent offered the testimony of two witnesses, former Division Marshal Robert Fairbanks and Captain Thomas Murphy. Former Division Marshal Fairbanks testified that he had a conversation with the decedent on March 18, 1970, at which time he noticed that the decedent was limping and inquired as to the cause. The decedent told him that several years ago he had suffered frostbite and periodically he suffered severe pain in the lower calf area of the right leg.

Lt. Wilkes did not file an accident report of his alleged accidental injury as required by departmental rules. The Court does not hold that such a violation of the employer's rules would, per se, foreclose claimants' rights under the LEOFC Act. This Court has followed the rule expressed in numerous Workmen's Compensation cases holding that an employee's violation of the employer's rules indicates that he is "only guilty of negligence which will not preclude an award of compensation." *I.L.P. Workmen's Compensation Section 158; Hertel* vs. *State, 1939, 11 Ill. Ct. Cl. 86.* However, the absence of any report of the alleged accidental injury in the records of the Chicago Fire Department does increase claimants' burden of proving that decedent was in fact injured; that he was "injured in the active performance of his duties as a fireman"; and that his death resulted from that injury. *Ch. 48, Sec. 282(e), Ill.-Rev.Stat., 1971.*

*Gould's Medical Dictionary* defines thrombophlebitis

as "inflammation of a vein associated with thrombosis". There is no indication in the doctor's statement that this was caused by an accidental injury and we find no basis for holding that this may be reasonably inferred. In fact, the manifest weight of the evidence is to the contrary.

No objection was raised to the testimony of Marshal Fairbanks on the grounds that it might be hearsay. Nevertheless, the Court weighed the admissibility of this testimony since it was obviously against claimants' interest. The LEOFC Act does not change the rules of evidence, and the admissibility of evidence in claim proceedings is covered by rules of the Civil Practice Act and the rules of the Supreme Court as stated in Rule 2 of this Court. In the applicable rules, we hold that Marshal Fairbanks' testimony was admissible as being a part of the res gestae and as an admission. *I.L.P. Workmen's Compensation §342.*

Finally, the death certificate states that the cause of death was a "stroke, cerebral hemorrhage." Claimants contend that Dr. Glass, the physician signing the death certificate, "did not perform a diagnosis" of the alleged previous accident and did not have sufficient information on which to base a valid conclusion. Nevertheless, the death certificate must be considered by the Court for such probative value as it may have in the light of claimants' objection, and in the absence of any significant evidence to contradict it.

The Court is bound by the language of the statute which is a special act for the payment of compensation only in cases in which an officer is "killed in the line of duty." To qualify under this Act, claimants must prove by a preponderance of the evidence that the deceased officer lost his life "as a result of injury received in the active performance of his duties" and that "the injury arose from violence or other accidental cause." The evidence

submitted in this case totally fails to establish the essential facts that are required to justify a finding that the officer was killed in the line of duty as required by the Act. The Court finds that Lt. Wilkes was not killed in the line of duty as defined in the Law Enforcement Officers and Firemen Compensation Act.

IT IS HEREBY ORDERED, therefore, that this claim must be, and the same hereby is, denied.